ELMER THOMPSON, Appellee, v. HENRY DAMM, Appellant.

**ASSIGNMENTS: Action by Assignee.** A written assignment of a claim authorizes the assignee to maintain an action on the assigned claim.

**FRAUD: False Representations—Belief in Truth of Representations.** One to whom representations have been made, may testify that he believed the representations to be true.

**FRAUD: Jury Question.** Evidence held to present a jury question on the issue of fraudulent representation in the sale of seed corn.

**FRAUD: Inspection Before Buying.** The mere optical inspection of seed corn by a purchaser before buying. does not preclude him from relying on fraudulent representations as to the germinating qualities of the corn.

**TRIAL: Instructions—Applicability to Evidence.** It is not error to refuse to instruct "that the mere expression of an opinion that corn would grow does not constitute a warranty," when the record reveals the fact that the defendant's representations were unquestionably statements of fact.

*Appeal from Lyon District Court.—*WILLIAM HUTCHINSON, Judge.

NOVEMBER 15, 1921.

ACTION to recover damages, based on alleged false representation of seed corn sold by defendant to plaintiff and his assignees. The jury returned a verdict for plaintiff in the amount of $119.96. Judgment was entered on the verdict, from which judgment defendant appeals.—*Affirmed.*

*E. C. Roach,* for appellant.

*S. D. Riniker,* for appellee.

ARTHUR, J.—About the 1st of May, 1918, plaintiff purchased from defendant 8 bushels of corn. William Rowe bought 12 bushels, and Oscar C. Thompson, 15 bushels. Rowe and Oscar C. Thompson assigned their claims for damages to plaintiff, Elmer Thompson. In all, 35 bushels of seed corn were purchased from defendant, at $5.00 per bushel. Plaintiff demanded damages in the amount of $3.75 per bushel, tendering and acknowledging, by way of rescission, $1.25 per bushel, as the market price of corn which was not seed corn.

The action was based on representations that the corn was good seed corn, and that it would grow well, and upon divers statements which induced the purchasers to buy the corn for use as seed corn, and pay therefor $5.00 per bushel. It is alleged that the representations and statements made, respecting the corn as seed corn, were false, and known by the defendant to be false at the time they were made; that the corn would not grow, and had no value whatever as seed corn, and was worth only the price of similar corn on the market, which was $1.25 per bushel.

Defendant specifically denied that he falsely and fraudulently represented the corn to the purchasers, and specifically denied that he in any manner represented that the corn would grow, or guaranteed it to do so. Defendant claims that the purchasers looked at and examined the corn, and bought it on their own judgment; that he specifically stated that he did not warrant the corn to grow, and stated to the purchasers that, if they bought it, they must take it on their own judgment.

Some 15 errors are assigned, lodged at the validity of the assignments of claims to plaintiff, at the rulings on admission of testimony, ruling on motion to direct verdict, ruling on motion for a new trial, refusal to give instructions requested by defendant, and certain instructions given. We need not discuss the claimed errors seriatim, but cover the points by discussion of the questions involved.

The objection that assignments to plaintiff of their causes of action by Rowe and Oscar C. Thompson were without consideration, and that plaintiff could not maintain an action thereon, is without merit. The assignments were in writing, and imported consideration, and authorized plaintiff to maintain the suit.

1. ASSIGNMENTS: action by assignee.

Objection to permitting witness Rowe to testify that he believed the corn would grow, from what defendant said about the corn,—was only saying that he believed statements made by defendant,—was not well taken; and neither was it error to permit cross-examination of defendant as to the sale of corn to Fisher, who tested the corn and found that it would not grow.

2. FRAUD: false representations: belief in truth of representations.

Defendant insists that it was error to overrule his motion to direct a verdict, because, as he claims, there were no representations amounting to warranty made by defendant. He claims that he said, before the corn was purchased, that he did not and would not guarantee the corn, and that, therefore, there was no testimony showing fraudulent representations, on which to base the action. Defendant claims that the testimony of representations was only that the neighbors had tested the corn and said that it tested around 85 per cent; and that there was no testimony that the neighbors had not tested the corn with such a result; and that no false representations were shown.

3. FRAUD: jury question.

The motion for a new trial involved practically the same propositions.

From a careful examination of the record, we find no error in overruling these motions. There was dispute in the evidence as to the representations as to the corn. Defendant contradicted the testimony of all of plaintiff's witnesses. It was for the jury

to determine what representations were, in fact, made; whether the representations were false or not, if made; whether or not defendant knew, at the time, the representations to be false; and whether plaintiff and his assignors believed and relied upon the representations, and were thereby induced to buy the corn for seed.

Plaintiff testified that he and Rowe, one of his assignors, asked defendant if the corn he was selling would germinate and grow, and defendant answered that it would; that it would grow; that his neighbors had tested it, and it grew from 84 per cent to 95 per cent; that he had planted it, and it grew. He further testifies that defendant said that he was planting his own corn, and spoke about his having a good stand of corn.

"Before they left with the corn, he remarked that I was very lucky in getting a sack and a half for my son-in-law."

Plaintiff says that defendant did not tell them that he would not guarantee the corn to grow; and that Martin, at whose solicitation they had gone to defendant's place for seed corn, did not tell him that Damm would not guarantee the corn to grow; that Damm did not say anything about not guaranteeing the corn to grow; that Damm did not say anything about guaranteeing it by using the words "guaranty or warranty;" that he said he did not have time to test the corn himself, and that he depended on his neighbors in testing it.

William Rowe, who was with plaintiff, the first trip they made to defendant's farm to buy seed corn, testified that Damm said:

"I haven't tested it myself, but lots of them tested it around here, and some of the neighbors said it grew from 85 per cent to 95 per cent."

Rowe tested the corn, and it tested 18.

William Rowe, Jr., who was with plaintiff and his father when they bought the seed corn, testified:

"Damm showed us the corn in the crib; said his neighbors had tested it, and it grew 84 per cent to 85 per cent. When the corn was sacking, it did not look very good, but Damm said it would all grow."

Oscar C. Thompson testified:

"I asked him if he had seed corn to sell. He said, 'Yes,

they are getting it away every day, and I am so busy I don't hardly get my field work done.' I said, 'I would like to get some of the corn.' He took me over in the crib, and we sacked up 15 bushels. I asked him how it was germinating, and he said he was so busy he had not had time to test it; that several of his neighbors had tried it, and it grew from 84 per cent to 95 per cent. I said, 'Well, if it grows that good, it will be good enough to plant for seed,' and he said, 'Yes, it will;' and I took the corn. Damm never told me that he would not guarantee the corn for seed.''

Thompson said that he examined the corn; that he was no seed corn judge, and took it on what Damm told him.

Appellant Damm testified that, when the parties came for the corn, Elmer Thompson said to him,

''I want you to let me have a sample, and promise me to keep the corn until I get it tested.''

''I said,—now, because he asked it that way, that made me kind of cross,—and I told him, 'The first come, the first served.' They were coming every day, and it would be impossible anyway to keep that corn for him,—that the corn wouldn't be there; and I didn't say another word about it.''

Appellant said, when asked what was said about whether the corn would grow:

''Nobody asked me any questions at all, all through the day; but one fellow got in there,—I don't know where he was from,—but he started looking on for a while, and then he said, 'You are giving good measure;' and then he turned to the other fellows and said, 'This corn tests 95 per cent, and a good many guarantee 85 per cent.' Then I said, 'I don't guarantee one per cent.' I know that Elmer Thompson was there, and he looked at me, and nobody said a word.''

Damm further testified that there wasn't any talk about his neighbors' having tested the corn; that there was lots of talk, but not about guaranteeing it, or anything that way; that he did not tell the parties that his neighbors had tested the corn; that all that was said about guaranteeing was as he stated above, ''I don't guarantee one per cent,'' when someone remarked that the corn tested 95 per cent, and a good many guaranteed 85 per cent. When asked what he said about whether the

corn would grow, he answered: "I don't remember anything about that, but I am sure I said it to nobody." When asked if he heard the testimony of plaintiff's witness, attributing to him the statement that his neighbors had tested the corn, and that it grew from 84 per cent to 95 per cent, Damm answered:

"I might have said what I was just going to say about one neighbor that tested it, and I said that that was '16 corn, and that was '14 corn, except on top of the crib. You know there was this '14 corn, and the other was '16,—there were two years between. In 1915, we had soft corn, and it shrunk, and I refilled the crib; and the way it went down, whoever was lucky enough to get there, he was the lucky man. I told Elmer Thompson that some of the corn was '14 corn. I don't remember what Rowe said to me, for I don't remember at all that he was there. I told everybody, when the question was asked, that it was '14 corn, except what was on top. I did not tell Thompson that it was '14 corn,—he did not ask me about it. They looked at the corn and examined it before they took it,—I suppose so; there were so many, they kept me busy. I was busy all the time, scooping it up and filling the sacks up. I never tested it. Most of the '14 corn grew. So far as I know, it might be seed corn; I didn't know whether it grew or not."

When asked if a man by the name of Fisher did not complain that the corn would not grow, Damm answered at first that Fisher did complain to him, before plaintiff and his assignors bought, but afterwards remembered, and qualified this statement, saying:

"I don't believe it was before that Sunday, but before Elmer Thompson came the second time; because I remember I told him about it, when he bought the last three bushels."

Damm said that plaintiff and his assignors did not ask him any questions, except that Elmer Thompson asked him for a sample, for him to test out, and wanted him to reserve some corn for him until he tested it out; that they did not talk to him about whether the corn would grow, or whether it had been tested.

On rebuttal, Elmer Thompson testified that, at the time he bought the corn, appellant did not tell him that Fisher had complained about the corn; but that he told him about Fisher's

complaint long afterwards, in July; that, if he had told him of Fisher's complaint, he would not have bought.

There was ample testimony supporting each element of the case, on which to submit the case to the jury. Appellant contradicted all of defendant's witnesses on material points. A careful examination of appellant's testimony reveals that he was an evasive witness, and quite cunning. It is intimated, in argument, that appellant is an ignorant man. Speaking from the record, the writer would not characterize him as ignorant concerning his avocation, and particularly in the sale of seed corn. It would be more apt to say that he is unlettered. He displays shrewdness and craftiness, as well as greediness.

It is not clear, but we may infer from appellant's testimony concerning 1916 and 1914 corn that he used for his own seed the 1916 crop, which was at the top of the crib, and that the corn sold to appellee and his assignors came from lower down in the crib, and was 1914 corn. In this view, which we think is correct, appellant's assertion, in effect, that he planted from his own corn, and that he had a good stand, was calculated to deceive the purchasers and to induce them to buy.

Counsel for appellant complains of the refusal of the court to instruct the jury as requested by him. The instructions given were substantially as requested by defendant, except in regard to opportunity to examine the corn, and that it was inspected by the purchasers. It is counsel's position that, under the testimony, the rule of *caveat emptor*, as embodied in his requested instructions, should have been applied; that there was no express warranty; that there was no evidence of fraud or false representations; that the plaintiff saw the corn and fully examined it, and had as much means of knowing whether the corn would grow as the defendant had.

4. FRAUD: inspection before buying.

It was not error to omit to instruct on such rule. Adequate test cannot ordinarily be made of seed by merely looking at it, to determine whether it will grow, and the strength of germination; and proper test cannot be made immediately. A sample would need to be obtained, and some time would need to be taken to test it, by some method. Appellee refused appellant

a sample of the corn and reservation of some corn until he could test it.

Counsel for appellant urges that it was error to refuse to give his requested instruction that "the mere expression of his [appellant's] belief or opinion that the corn would grow would not constitute warranty." Unquestionably, it is the law that

5. TRIAL: instructions: applicability to evidence.

a statement does not constitute a warranty unless the vendee is justified in relying on it as a statement of fact, as distinguished from an opinion. *McDonald Mfg. Co. v. Thomas*, 53 Iowa 558. There are many other cases holding similarly. Ordinarily, such instruction is given, in cases based on fraudulent representations. Omission to give such instruction in the instant case, if it was error, was not prejudicial to appellant. The representations attributed to appellant, which the jury must have found were made, were unquestionably statements of fact, and not of opinion.

On a careful examination of the record, we do not find error in rulings of the court on admission of testimony, on motions, in refusing requested instructions, or in instructions given. Accordingly, the judgment of the trial court is affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.